Yeager, S.
The question at issue in this proceeding involves a construction of section 36 of the Lien Law and a possible conflict between it and sections 212 and 216 of the Surrogate’s Court Act. The decedent was a general contractor and, before his *539 death, was remodeling premises of the Lincoln Clothing Company, Inc., in Buffalo, New York.
It was stipulated by counsel in behalf of their clients that in connection with said remodeling job there exists a claim of the Pittsburg Plate Glass Company amounting to $225.79 and a claim of the Henrich Lumber Company amounting to $1,085.04. These claims are based upon the furnishing of materials, labor, or both during the year 1952.
Testimony was given by the president of the Lincoln Clothing Company, Inc., that $21,000 had been paid to Elias D. Einaeh, the contractor, before his death. He further testified that if Einaeh’s work were complete, which it isn’t, his company would owe an additional $1,500 to the Einaeh estate. No legal action has been taken by the Einaeh estate against Lincoln Clothing Company, Inc., but apparently action was commenced against the Lincoln Clothing Company, Inc., by Pittsburg Plate Glass Company and Henrich Lumber Company by service of a summons on December 15, 1953, which has never been tried.
Section 36-a of the Lien Law in substance declares that funds received by a contractor from an owner for the improvement of real property are constituted as trust funds in the hands of such contractor for the payment of claims of subcontractors, architects, laborers, materialmen, etc. It also provides that such trust may be enforced by civil action by any person entitled to share in the fund whether or not he shall have filed, or had the right to file, a notice of lien, and whether or not he shall have recovered a judgment. The latter provision was added to the law in 1942. The last sentence in section 36-a was also added in 1942 and extended the trust character or lien to apply not only as against moneys received by the contractor but also against moneys that become due a contractor. Contractors who ignore the provisions of the Lien Law relating to diversion of funds paid for particular improvements, without paying the claims of subcontractors, laborers, materialmen, etc., run the risk of violating section 1302 of the Penal Law dealing with larceny.
The estate of Elias D. Einaeh is insolvent. Administration expenses have not been paid. The funeral bill of $1,165 was paid by the decedent’s widow, who is the administratrix in this estate.
Is the indebtedness of the Lincoln Clothing Company, Inc., to the Einaeh estate an asset of the Einaeh estate? Under section 216 of the Surrogate’s Court Act the legal representative of an estate is directed to pay reasonable funeral expenses out of the first moneys received. Cases arising under that section *540 have placed administration expenses ahead of funeral expenses in priority, but at any rate both administration expenses and funeral expenses have been repeatedly held to constitute charges against an estate in contrast to debts. The priority of debts owing by an estate , is prescribed by section 212 of the Surrogate’s Court Act.
The importance of giving priority to funeral expenses was eloquently treated by Surrogate Slater in his opinion rendered in March, 1926, in Matter of Stiles (126 Misc. 715). In addition to the many eases, both foreign and domestic, which Surrogate Slater referred to, giving priority to funeral expenses over general creditors, judgment creditors and even the sovereign State, the following cases also hold that a funeral bill is not a debt of the estate but a charge against the estate: Matter of Franklin (26 Misc. 107); Matter of Ellis (110 Misc. 192); Barter v. Hawksworth (102 Misc. 242); Matter of Powers (75 Misc. 85).
A reasonable funeral bill must be paid in preference to a judgment against the decedent; so held by the Surrogate of Oneida County in Matter of Tierney (88 Misc. 347); and also in preference over a debt for taxes due the Federal Government, as was held by Surrogate Foley in Matter of Lawrence (N. Y. L. J., Oct. 3,1922, p. 28, col. 1).
What is the purpose of section 36 of the Lien Law, particularly section 36-a?
In Matter of Marstan Plumbing Co. (176 Misc. 956, 957) we find this explanation: “ It is evident from the language of this section that the Legislature intended to protect all claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement and, as is pointed out by the assignee, there are other creditors similarly situated as the petitioner who have furnished material and labor for the very job in question. They, together with the petitioner, form a class which should, in my opinion, equitably share in the funds upon which the statute has imposed a trust.”
Counsel for the estate in the instant matter argues that the Lien Law should be strictly construed. On the other hand, section 23 of the Lien Law entitled “ Construction of article ” provides as follows: ‘ ‘ This article is to be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same.”
Courts have said that the Lien Law should receive a liberal construction. (Eno v. Rapp, 169 Misc. 473; Keck v. Charles B. Saxon, Inc., 164 Misc. 17.)
*541 It has been suggested by one or both attorneys in this matter that this is a case of first impression, and I agree with that position. While cases can be found which throw some light on this dispute, no exact precedent has been located.
So we return to the underlying question: to whom does the money or chose in action belong — the Einach estate, free of any trust, or the Einach estate subject to a trust? The question whether the amount of money owing to a contractor has or has not been actually received by the contractor is no longer a determinative factor, as it was previous to 1942. For example, the fact that the money had not been actually received by the contractor was found to be fatal in Matter of Marstan Plumbing Co. case (176 Misc. 956, supra), hereinbefore referred to, which was decided in 1941.
If Mr. Einach had not died, moneys received by him from Lincoln Clothing Company, Inc., or due him from Lincoln Clothing Company, Inc., would have been impressed with a trust in favor of the individuals named in section 36-a. Does his death have the effect of wiping out the rights of such individuals for whose benefit section 36-a was adopted? Does his death mean that moneys paid by an owner to a contractor, or owed by the owner to the contractor, and which obviously are the source from which the contractor will ordinarily draw to pay for his materials and labor, are not reserved for these purposes? May they be tapped by an undertaker, the Federal or State Governments, judgment creditors and so on?
Justice Walter in Special Term, New York County, in 1940 held that: ‘ ‘ money received for work upon an improvement of real property is still the property of the one who does the work even though impressed with a trust in favor of creditors ” (Continental Cas. Co. v. Ben-Mil, Inc., 175 Misc. 220, 221). Because the plaintiff Continental Casualty Company had not obtained a judgment and had not joined other claimants in the action, Justice Walter denied plaintiff’s motion for an interlocutory judgment. The decision was affirmed by the Appellate Division (261 App. Div. 958), but the memorandum decision indicates that while the result reached by Justice Walter was approved, affirmance was not to signify approval of the reasons advanced for the result.
Matter of Kornder (168 Misc. 553) arose in Surrogate’s Court, Westchester County, in 1938 and involves at least two of the questions that are present in the Einach estate: (1) whether a single lienor may enforce payment or whether it must be a representative action, and (2) whether the money paid or payable is impressed with a trust for lienors or is a pure asset of *542 the decedent’s estate. Surrogate Millard noted that it was an insolvent estate and held that “ [t]he rights of the vigilant claimant must be protected” (p. 556). In other words, he did not insist on a representative action being' brought. Secondly, he held ‘ ‘ that the funds now in the estate in the sum of $1,342.57 are impressed with a trust in favor of Constance V. Sussman [the contractor] and that she is entitled to receive the same against the administratrix and all other creditors ” (p. 557); in other words, that the money in the hands of the administratrix of the estate was subject to the lien or charge of the petitioner, Constance V. Sussman, against the above-stated sum, and not a pure asset of the estate.
Matter of Sielcken (176 Misc. 799) arose in Surrogate’s Court of New York County in 1941. It involves an intermediate application- by attorneys for further payment on account of legal services. It appeared that there were claims of the United States and others against Sielcken’s estate which, if successful, would exhaust the estate. Surrogate Foley concluded that the petition for additional legal fees should be held in abeyance until the pending litigation was concluded. In the course of his opinion he expressed himself on the subject of what items are estate assets and thus available for funeral expenses, debts, etc., and what items are not estate assets. He said (p. 802): ‘ It is an elementary rule of the law of administration of estates that where moneys have been traced and identified as the funds of another person, they may not be subjected -to the payment of funeral expenses, administration expenses, including commissions, or the debts of the decedent. Such funds and property do not constitute estate assets and their misapplication or diversion to improper purposes constitutes a breach of trust.” (Citing a number of New York cases including Matter of Kornder, 168 Misc. 553, supra.) What did Surrogate Foley mean by the phrase ‘ ‘ identified as the funds of another person Did not ■ funds in the hands of Mr. Einach or moneys due Mr. Einach from the Lincoln Clothing Company, Inc., and which have been declared to be trust funds for payment to subcontractors, materialmen, etc., become tantamount to ‘ funds of another person■”? If so, they are not assets of the estate, available for administration and funeral expenses.
Let us return to the question of procedure. It would seem to be answered in section 71 of the Lien Law. It was added to the Lien Law in 1942 and provides in part as follows: “ A trust described in sections * * * -thirty-six, thirty-six-a or thirty-six-b of article two of this chapter may be enforced by any *543 person entitled to share in the trust fund in a representative action brought for the benefit of all persons entitled to share in the fund.” This section is part of an entirely new article, ‘ ‘ article 3-A enforcement of trusts ’ ’, added to the Lien Law in 1942. The purpose of the Law Revision Commission was “ to clarify and strengthen the trust fund provisions of the Lien Law, and to provide a civil remedy for the enforcement of the trusts created therein ’ ’; and we are informed that the amendments to several sections, including 36-a and 36-b were ‘ ‘ to permit the enforcement of trusts created by those sections by a beneficiary designated in the statute whether or not a notice of lien has been filed or a judgment recovered for a claim arising out of the improvement. These amendments also provide that whenever money received by a contractor or subcontractor under an assignment would constitute a trust fund, the right to receive money under such assignment shall be included in the trust fund, but only for the purposes of a civil action ” (1942 Report of N. Y. Law Revision Commission, p. 282).
The following conclusions are indicated: (a) it is not necessary for a claimant to reduce his claim to judgment in order to qualify for the benefits provided in section 36-a of the Lien Law; (b) the action brought pursuant to section 36-a should be" a representative action. Although section 71 of the Lien Law says: “ may be enforced ” and not “ must be enforced ” it seems plain enough that the Legislature intended to revoke the conflict illustrated in cases cited in this opinion, one holding that a representative action was necessary and another holding that a vigilant claimant should be rewarded even though he had not made other claimants parties to the proceeding; (c) the Lien Law is to be liberally construed to accomplish its purposes ; (d) money or a chose in action, which at a given moment was charged with a trust character for the benefit of material-men, laborers, etc., does not lose that character by the death of the contractor five minutes later; (e) such moneys or chose in action are not pure assets of the estate and hence are not available to satisfy either “ charges ” such as administration and funeral expenses, or debts and judgments against the estate.
Unfortunately, in an insolvent estate some claimant is bound to be hurt. In the case of Mr. Einach, his widow commendably provided him with a burial out of her own resources, although, to be sure, this is a legal as well as a moral obligation in case of an insolvent estate. Nothing in this opinion gainsays the lofty and oft repeated maxims and rulings to the effect that everyone has a right to a decent burial but I feel that the *544 statutory provisions of the Lien Law are an impediment to the preferred status often given to funeral and administration expenses.
The petitioners in this case ask for an accounting by the administratrix and for a decree ordering her to pay the two claims. An accounting is directed; but, under the limited terms of the stipulation of counsel, and in view of the Lincoln Clothing Company, Inc., counterclaims against the petitioners for unfinished work, I am constrained to deny the request for an order of payment, thus leaving the parties to adjudicate, in a proper forum, the validity and amount of their claims. However, I hold that whatever indebtedness may eventually be legally established from the Lincoln Clothing Company, Inc., to the Einach estate, arising from work or materials furnished by these claimants or others qualifying under the Lien Law, is fastened with the trust characteristic described in section 36-a of the Lien Law and is superior to administration and funeral expenses.
Submit a decree, on notice, in accordance with this decision.